The judgment of the United States Customs Court is *affirmed.*

UNITED STATES *v.* MANAHAN CHEMICAL CO., INC. (No. 3935)[1]

United States Court of Customs and Patent Appeals, February 24, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Joseph F. Donohue* and *Webster J. Oliver*, special attorneys, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee

[Oral argument February 5, 1936, by Mr. Carter and Mr. Donohue]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the United States Customs Court, Third Division, in reappraisements 103725–A, etc., affirming the judgment of the trial court.

It is unnecessary, for the purpose of this opinion, to state *in extenso* the issues presented to the courts below. It is sufficient to say that they relate to the provisions of the "Antidumping Act, 1921."

On January 24, 1936, counsel for appellee filed in this court a motion to dismiss the appeal on the ground that this court is without jurisdiction to dispose of the issues presented thereby.

Briefs were filed by the parties, and the cause was orally argued on February 5, 1936.

It is the contention of counsel for appellee that as section 210 of the "Antidumping Act," *supra*, provides that appeals may be taken "under existing law," and as subsection M of section 3 of the tariff act of October 3, 1913, was in full force and effect at the time of the enactment of the "Antidumping Act" and provided that the decision of the board of three general appraisers (now a division consisting of three judges of the United States Customs Court, hereinafter referred to as the Appellate Division of that court) "shall be final and conclusive against all parties and shall not be subject to review in any manner for any cause in any tribunal or court," no appeal now lies from the decision of the Appellate Division of the United States Customs Court in reappraisement cases involving so-called dumping duties.

Section 210 reads:

That for the purposes of this title the determination of the appraiser or person acting as appraiser as to the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and the action of the collector in assessing special dumping duty, shall have the same force and effect and be subject to the same right of appeal and protest, under the same conditions and subject to the same limitations; and the general appraisers, the Board of General Appraisers, and the Court of Customs Appeals shall have the same jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law.

Although the Tariff Act of 1922 repealed the tariff act of 1913, and titles I, III, and V of the "Emergency Tariff Act" of May 27, 1921, the "Antidumping Act, 1921"—title II of the "Emergency Tariff Act"—was not repealed, but remained in full force and effect.

The Tariff Act of 1930, under which the involved merchandise was imported, repealed the Tariff Act of 1922, but did not repeal the "Antidumping Act."

It may here be noted that the Tariff Acts of 1922 and 1930 each provided for appeals in reappraisement cases from the Appellate Division of the Customs Court to this court on questions of law only. See sections 501, Tariff Acts of 1922 and 1930.

Counsel for appellee contend that the language of section 210, *supra*, is not ambiguous, and that the words "under existing law," contained therein, refer—

* * * grammatically to the Tariff Act of 1913 and Congress has expressed its intent that the words should continue to be so understood. They could have had no other meaning when the Antidumping Act was passed and Congress could not have had any possible future statutes in mind because of the temporary nature of the law in which the Antidumping Act is found.

The United States contends that the words "under existing law" mean the law existing at the time of importation of the merchandise. Of course those words may be used in some particular statute with an intent to invoke a law in force at the time an act is done, but the weight of authority seems to be that such words refer to laws existing at the time the statute was enacted.

In support of their proposition that the words "under existing law" refer to the law existing at the time the statute was enacted, counsel for appellee rely upon the decisions in the cases of *Jonesboro City* v. *Cairo and St. Louis R. R. Co.*, 110 U. S. 192; *McKean* v. *Archer*, 52 Fed. 791.

It will be observed that section 210 of the "Antidumping Act" provided not only for appeals in reappraisement cases, but also for appeals in protest cases.

Subsection N of section 3 of the tariff act of 1913 provided for appeals in protest cases to this court from the Board of General Appraisers (now United States Customs Court), "within the time and in the manner provided for by law." The law referred to therein was section 198 of the Judicial Code. It is obvious, therefore, that it was not intended by the Congress that the provisions of section 210, *supra*, should be limited to the provisions of the tariff act of 1913.

The law applicable to the interpretation and application of the term "under existing law" is clearly stated, and numerous authorities are cited in support thereof, in Sutherland on Statutory Construction, Vol. 2, (2nd Ed.), Sec. 405, pp. 787, 788, and 789 as follows:

* * * Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated

bodily into the adopting statute. When so adopted, only such portion is in force as relates to the particular subject of the adopting act, and as is applicable and appropriate thereto. Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent. Nor will the repeal of the statute so adopted affect its operation as part of the statute adopting it. The effect may be thus comprehensively stated: Where a statute is incorporated in another, the effect is the same as if the provisions of the former were re-enacted in the latter, for all the purposes of the latter statute; and the repeal of the former statute does not repeal its provisions so far as they have been incorporated in an act which is not repealed, where the adoption was for the purpose of providing for a subject-matter not within the original statute.

\*    \*    \*    \*    \*    \*    \*

There is another form of adoption wherein the reference is, not to any particular statute or part of a statute, but to the law generally which governs a particular subject. The reference in such case means the law as it exists from time to time or at the time the exigency arises to which the law is to be applied. The supreme court of Illinois says: "Where, however, the adopting statute makes no reference to any particular act by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting act, but also the law in force when action is taken, or proceedings are resorted to."

In view of the fact that the Congress did not refer in section 210, *supra*, to any particular act or statute, but referred rather to the general law on the subject, we must, under the authorities, hold that it was its purpose, by the language—

and the general appraisers, the Board of General Appraisers, and the Court of Customs Appeals shall have the same jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law,

contained therein, to include not only the law in existence at the time of the enactment of the "Antidumping Act, 1921" but also the law in force at the time of the importation of merchandise subject to the provisions of that act. See *Thoits* v. *Byxbee*, 167 Pac. 166; *Curtis* v. *Wortsman*, 26 Fed. 36; *Cole* v. *Donovan*, 64 N. W. 741; *Culver* v. *People*, 43 N. E. 812, 814; *City of St. Louis* v. *R. J. Gunning Co.*, 39 S. W. 788.

We deem it unnecessary to discuss the issues in the cases of *Jonesboro City* v. *Cairo and St. Louis R. R. Co.*, *supra*, and *McKean* v. *Archer*, *supra*, relied upon by counsel for appellee, as it is clear from the opinions delivered in those cases that the facts warranted the application of the principle first announced in the quoted excerpt from Sutherland on Statutory Construction, that is, that where a statute specifically adopts the provisions of another statute by particular reference thereto, the "effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute," and the repeal of the statute from which the provisions were adopted would not in any way curtail or affect the provisions of the adopting statute.

We are of opinion, therefore, that the language contained in section 210, *supra*—

and the general appraisers, the Board of General Appraisers, and the Court of Customs Appeals shall have the same jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law.

had reference to the law in force at the time of the importation of merchandise subject to its provisions, and was not intended to be limited to the provisions of law existing at the time of the enactment of the Antidumping Act.

The involved merchandise was imported under the Tariff Act of 1930. Section 501 of that act clothes this court with power to review judgments of the Appellate Division of the United States Customs Court in reappraisement cases on questions of law only. Accordingly, subject to the limitations mentioned, this court has jurisdiction to dispose of the issues in the case at bar.

The motion is, therefore, *denied.*